Filed 12/9/21  In re Laylah L.-T. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Laylah L.-T., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, <br><br>    Plaintiff and Respondent, <br><br> v. <br><br> V.T., <br><br>    Defendant and Appellant. | A162606 <br><br> (Contra Costa County Super. Ct. No. J2000456) |

V.T. (mother) appeals from a juvenile court order terminating parental rights as to her daughter, Laylah L.-T., at the conclusion of a permanency planning hearing (Welf. & Inst. Code, § 366.26).[1]  Mother contends the court erred by failing to apply the beneficial relationship exception to termination of parental rights.

We disagree and affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND

Mother has four children and a long history of substance abuse. Mother's parental rights as to three of the children were terminated before Laylah — her youngest child — was born.

Laylah was born in June 2018. She tested positive for amphetamines and was removed from mother's care. Eight months later, in February 2019, Laylah returned to mother under a family maintenance plan.

In August 2020, mother was found passed out in her car while Laylah wandered around a parking lot, barefoot and crying. Laylah was dirty and unkempt. Mother acknowledged "having a drug problem" and admitted smoking methamphetamine the day before the incident. Police officers arrested mother for child endangerment; the Contra Costa County Children and Family Services Bureau (Bureau) filed a petition alleging mother's substance abuse problem placed Laylah at substantial risk of harm and that mother's parental rights as to Laylah's half siblings had been terminated (§ 300, subds. (b)(1), (j)). The juvenile court detained Laylah and provided mother with supervised visitation and a substance abuse treatment referral.

In November 2020, the juvenile court declared Laylah a dependent, bypassed reunification services (§ 361.5, subds. (b)(10), (11)), and scheduled a permanency planning hearing. Mother received supervised visitation twice a month. Despite acknowledging that she needed substance abuse treatment to keep Laylah safe, mother left a treatment program.

The Bureau's permanency planning report recommended terminating parental rights. According to the Bureau, Laylah was adoptable, and her foster parents — with whom Laylah had a "close and secure attachment" — wanted to adopt her. Laylah called her foster

parents " 'mommy' and 'daddy.' " The report provided a detailed description of mother's visits, which were positive and loving. Nonetheless, the Bureau opined the "current parent child relationship [did] not outweigh the benefits of adoption."

At the March 2021 permanency planning hearing, the parties submitted on the Bureau's report, but counsel for mother objected to "the recommendation of adoption" and urged the court to order guardianship as the permanent plan. According to counsel, Laylah "had a relationship" with mother and was "bonded" with her. Counsel also noted Laylah's visits with mother went "very well" and that Laylah was "happy" during the visits.

The Bureau's counsel acknowledged Laylah loved mother and enjoyed spending time with her. But counsel argued the relationship did not promote Laylah's well-being to such a degree as to outweigh the well-being she would gain in a permanent home with adoptive parents. Additionally, counsel for the Bureau noted mother had missed several visits, and that Laylah had "spent a good portion of her life out of mother's care." Adoption, according to counsel, was "the best permanent plan for Laylah."

The juvenile court agreed and terminated mother's parental rights. "[F]ocusing on Laylah," the court found it would be in her "best interest" to order a permanent plan of adoption. In reaching this conclusion, the court impliedly concluded mother had not established the beneficial relationship exception.

## DISCUSSION

At a hearing to select a permanent plan, the juvenile court may choose adoption, guardianship, or continued foster care. (§ 366.26, subd. (b).) Adoption is the preferred plan. (*Id.*, subds. (b)(1), (c)(1).) When the court determines a child is likely to be adopted if parental rights are terminated, it

3

must select adoption as the permanent plan unless "the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) The statutory reasons for departing from " 'the norm' " of adoption apply only in " 'exceptional circumstances.' " (*Id.* at p. 631.)

The beneficial relationship exception to the preference for adoption applies when the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) For this exception to apply, the parent must show by a preponderance of the evidence "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631, italics omitted.)

As to the first element, the question is whether the parent " 'visit[s] consistently,' taking into account 'the extent permitted by court orders.' " (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) "As to the second element, courts assess whether 'the child would benefit from continuing the relationship.' " (*Ibid.*) "Concerning the third element — whether 'termination would be detrimental to the child due to' the relationship — the court must decide whether it would be harmful to the child to sever the relationship and choose adoption." (*Id.* at p. 633.)

"When it weighs whether termination would be detrimental, the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s). Nothing that happens at the section 366.26 hearing allows the child to return to live with the parent. [Citation.] Accordingly, courts should not look to whether the parent can provide a home for the child; the question is just whether losing the

4

relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home. . . . And the section 366.26 hearing is decidedly not a contest of who would be the better custodial caregiver." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.) Additionally, a "parent's continued struggles with the issues leading to dependency are not a categorical bar to applying the exception." (*Id.* at p. 637.)

The first two elements — whether the parent has visited and maintained consistent contact with the child and whether the child would benefit from continuing the relationship with the parent — are reviewed for substantial evidence. The third element — whether termination of parental rights would be detrimental to the child due to the child's relationship with the parent — is reviewed for abuse of discretion. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.)

The Bureau's report provides evidence that mother visited regularly and that she has a loving, positive relationship with Laylah. Presumably, continuing the relationship would be of some benefit to Laylah. (See, e.g., *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) But as the juvenile court impliedly recognized, mother failed to meet her additional burden of showing that terminating the relationship "would harm [Laylah] to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at pp. 631, 634.) At the permanency planning hearing, mother did not testify or offer any evidence that would support a finding that terminating her relationship with Laylah would be detrimental. In the absence of any evidence offered by mother — and in light of the benefits to Laylah of placement in an adoptive home — the court was within its

discretion to impliedly conclude mother had not established the beneficial relationship exception. (*Id.* at p. 631.)

The cases upon which mother relies do not compel a different result. In *In re S.B.* (2008) 164 Cal.App.4th 289, the parental-benefit exception applied where the father was the child's primary caregiver for three years and where a social worker and bonding expert testified to the detriment to the five-year-old child if parental rights were terminated. (*Id.* at pp. 295–296, 301.) In *In re J.D.* (2021) 69 Cal.App.5th 594, the social worker's testimony, "intimate" and "touching" entries from visitation logs, and compelling statements from the child's caregiver and therapist, established the mother had a "positive bond" with, and occupied a parental role in, the child's life. (*Id.* at pp. 610–611, 617, 619.) There is no such compelling evidence here.

Nor are we persuaded by mother's assertion that the juvenile court relied on factors disapproved in *Caden C.*, s*upra*, 11 Cal.5th at pages 634 and 637, which was decided after the permanency planning hearing in this case. To support this argument, mother relies on the court's comment that it "read about the history." This statement, according to mother, establishes the court erroneously relied on mother's substance abuse issues and her prior dependency cases in declining to apply the beneficial relationship exception. We disagree. Reviewing the record in the light most favorable to the lower court's determination — and considering the statement in context — we conclude the court was simply indicating it had reviewed the file in preparation for the hearing.

Mother also faults the court for failing to "mention" Laylah's relationship with mother, but it was mother's counsel who failed to explicitly assert the beneficial relationship exception at the permanency planning hearing. In declining to apply the exception, the court did not penalize

6

mother for her struggles with the issues leading to Laylah's dependency. (Cf. *In re B.D.* (2021) 66 Cal.App.5th 1218, 1229–1231 [reversal required where juvenile court relied on improper factors in declining to apply beneficial relationship exception].) Instead, the court properly focused on Laylah and her best interest. (*Caden C.*, *supra*, 11 Cal.5th at pp. 632–633.)

We have no doubt mother loves Laylah. But after carefully reviewing the record, we see no abuse of discretion in the juvenile court's implied conclusion that mother failed to satisfy her burden to establish the beneficial relationship exception. This is not the "rare" case where the court erred in failing to apply the exception. (Cf. *In re E.T.* (2018) 31 Cal.App.5th 68, 70.) Rather, the court determined that, consistent with the stated legislative preference in section 366.26, adoption will afford Laylah "the best possible opportunity to get on with the task of growing up by placing [her] in the most permanent and secure alternative that can be afforded [her]." (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1419.)

## DISPOSITION

The order terminating mother's parental rights as to Laylah is affirmed.

_____

Rodríguez, J.

WE CONCUR:

_____

Tucher, P. J.

_____

Petrou, J.

A162606